# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **TERRY KELLER** | **CIVIL ACTION** |
| **VERSUS** | **No. 18-14331** |
| **WINN-DIXIE MONTGOMERY, LLC, ET AL.** | **SECTION I** |

## ORDER & REASONS

Before the Court is a motion[1] for summary judgment filed by third-party defendant MSI Inventory Service Corporation ("MSI") and a motion[2] for partial summary judgment filed by third-party plaintiff Winn-Dixie Montgomery, LLC ("Winn-Dixie"). Winn-Dixie seeks an order from the Court requiring MSI to defend and indemnify Winn-Dixie against the claims brought by plaintiff Terry Keller ("Keller") and to reimburse Winn-Dixie for all attorneys' fees and court costs incurred to date. MSI argues that it has no duty to indemnify Winn-Dixie and asks that the Court dismiss with prejudice Winn-Dixie's third-party demand against it. No resolution has yet been reached with respect to any liability for Keller's claims. For the following reasons, both motions are denied.

### I.

This case arises from Keller's trip and fall over a pallet guard as she was conducting inventory counting of merchandise at a Winn-Dixie store in Gramercy, Louisiana on January 31, 2018. Keller, who was working as an MSI employee at the

---

[1] R. Doc. No. 33.
[2] R. Doc. No. 34.

1

time of the incident,[3] tripped over a pallet guard at the store and sustained injuries. According to both parties, prior to her fall, Winn-Dixie employee Trevor Kirksey ("Kirksey") had moved a pallet near the checkout aisle to allow Keller access to an area of the store to count inventory.[4] Kirksey then placed the pallet guard on the floor, which Keller tripped over as she was completing her inventory counting duties.[5]

Keller filed a complaint seeking damages against Winn-Dixie, alleging that Winn-Dixie had created an unreasonably dangerous condition that caused her damages and that Winn-Dixie failed to exercise reasonable care to keep its aisles in a reasonably safe condition.[6] Subsequently, upon information and belief that Keller was working in the course and scope of her employment with MSI when the accident occurred, Winn-Dixie filed a third-party complaint against MSI.[7] In its complaint, Winn-Dixie alleges that, pursuant to a Services Agreement between Winn-Dixie and MSI, Winn-Dixie is entitled to "full indemnity and reimbursement for the cost of defense incurred to date from MSI, in the amount of any judgment which may be

---

[3] Keller filed her complaint against Winn-Dixie as a "patron" of the Winn-Dixie store in Gramercy. R. Doc. No. 1, at 1 ¶ 4. In the present motions before the Court, Winn-Dixie and MSI do not dispute that Keller was working as an employee of MSI when she sustained her injuries. *See* R. Doc. Nos. 33-1, at 1 & 34-1, at 2. Keller also acknowledged in her deposition that at the time of her accident, she was working for MSI and that she was not a customer of Winn-Dixie. *See* R. Doc. No. 34-5, at 5.
[4] *See* R. Doc. Nos. 33-1, at 8–10; 34-1, at 2–3.
[5] *See id.*
[6] R. Doc. No. 1, at 2 ¶¶ 9–10.
[7] R. Doc. No. 11, at 1–2.

2

rendered herein in favor of plaintiff Terry Keller and against [Winn-Dixie] or for any payments which may be made by [Winn-Dixie] in settlement of the plaintiff's claim."[8]

MSI and Winn-Dixie dispute which party is responsible for the condition that caused Keller's injuries. MSI argues that Winn-Dixie created the condition because a Winn-Dixie employee, Kirksey, placed the pallet guard on the floor in such a way as to create an unreasonable risk of harm to Keller.[9] Consequently, according to MSI, Winn-Dixie breached its duty to Keller under the Louisiana Merchant Liability Statute, La. R.S. 9:2800.6.[10] Winn-Dixie claims, however, that "Terry Keller, or another employee of MSI either created the condition over which Terry Keller tripped or they ordered the movement of inventory, which ultimately created the condition."[11]

Winn-Dixie and MSI agree that Kirksey placed the pallet guard on the floor.[12] However, according to Winn-Dixie, Kirksey moved the pallet guard into that area

---

[8] *Id.* at 2 ¶ 9. The Court notes that Winn-Dixie's motion for partial summary judgment does not discuss payment for the settlement of Keller's claims. Instead, Winn-Dixie seeks indemnification and reimbursement "for all attorneys' fees and court costs incurred to date." R. Doc. No. 34-1, at 9. At an in-chambers conference held on September 10, 2019, counsel for Winn-Dixie confirmed to the Court that Winn-Dixie does not seek payment from MSI for the settlement of claims.
[9] R. Doc. No. 33-1, at 7–9.
[10] *See id.*
[11] R. Doc. No. 11, at 2 ¶ 8. In its answer to Keller's complaint, Winn-Dixie asserts the defense of comparative negligence and contends that Keller's damages, if any are awarded, should be proportionately reduced based on comparative fault. *See* R. Doc. No. 7, at 3 ¶ 17.
[12] *See* R. Doc. No. 33-1, at 8 ("[T]he evidence establishes that the pallet guard, which has been confirmed as the cause of [Keller]'s injuries, was placed on the floor in the location where [Keller] fell by Winn Dixie [sic] employee, Trevor Kirksey."); R. Doc. No. 34-1, at 3 ("Winn-Dixie does not dispute that its own employee was the individual who placed the pallet guard on the floor after moving the pallet to allow plaintiff access to the inventory.").

3

because an MSI employee requested that he do so.[13] MSI refutes this contention and asserts that Kirksey's decision to place the pallet guard "over an empty space of floor, at a height of five inches off the ground, which created a tripping hazard" was "made solely at the discretion of Mr. Kirksey."[14]

As previously stated, Winn-Dixie argues that even if Winn-Dixie's negligence caused Keller's injuries, MSI must indemnify Winn-Dixie from Keller's claims pursuant to the Services Agreement between Winn-Dixie and MSI.[15]

The Services Agreement provides for indemnification under certain circumstances. Section 9.2 states in relevant part:

1. Except to the extent due to the gross negligence or willful misconduct of [Winn-Dixie], [MSI] will defend, indemnify, protect and hold harmless [Winn-Dixie] . . . from all losses including attorneys' fees and court costs incurred by, or claims made against [Winn-Dixie] . . . as a result of [MSI]'s performance under this Agreement or liability, damage, claim, costs, cause of action, suit, demand or expenses (including without limitation reasonable attorneys' and in-house counsel fees and costs) that arises out of or relates to:

    a) any alleged defect in the Services, Deliverables or Work Products, or the use of any of the foregoing,

---

[13] *See* R. Doc. No. 34-1, at 2.
[14] R. Doc. No. 33-1, at 11.
[15] Winn-Dixie's third-party complaint against MSI alleges that Winn-Dixie is entitled to "tort indemnity and defense in this matter from MSI Inventory Services Corporation pursuant to a Services Agreement." R. Doc. No. 11, at 2 ¶ 6. Counsel for Winn-Dixie clarified to the Court that Winn-Dixie seeks indemnification pursuant to the Services Agreement alone; Winn-Dixie does not claim that MSI has a duty to indemnify that may be implied in law, in the absence of an indemnity agreement. *See Humphrey v. Higbee Lancoms, LP*, No. 18-6298, 2019 WL 2177366, at *2 (E.D. La. May 20, 2019) (Morgan, J.) ("The obligation to indemnify may be express, as in a contractual provision, or may be implied in law, under a tort or quasi-contract theory, even in the absence of an indemnity agreement.") (quoting *425 Notre Dame, LLC v. Kolbe & Kolbe Mill Work Co.*, 151 F. Supp. 3d 715, 721 (E.D. La. 2015) (Barbier, J.)).

4

    b) any breach or violation of any warranty, representation, term or condition of this Agreement by [MSI],

    c) any claim of personal injury, death or damage to property or the environment arising from any act or omission of [MSI], its agents, employees or any subcontractors;

. . .

3. The provisions of this Article 9 do not limit any other obligation of [MSI] to indemnify [Winn-Dixie] under terms of this Agreement when so stated, or where [Winn-Dixie] may have a right to indemnification under law . . . [MSI] understands and expressly agrees that, in the event [MSI] or any of its personnel or subcontractors is injured by an accident arising out of and during its performance of Services for [Winn-Dixie], . . . neither [Winn-Dixie] nor its insurance carriers shall be liable for any claims arising therefrom.[16]

## II.

Summary judgment is proper when, after reviewing the pleadings, the discovery and disclosure materials on file, and any affidavits, the court determines that there is no genuine issue of material fact. *See* Fed. R. Civ. P. 56. "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The party seeking summary judgment need not produce evidence negating the existence of material fact, but need only point out the absence of evidence supporting the other party's case. *Id.*; *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1195 (5th Cir. 1986).

---

[16] R. Doc. No. 34-3, at 11–12.

5

Once the party seeking summary judgment carries its burden pursuant to Federal Rule of Evidence 56, the nonmoving party must come forward with specific facts showing that there is a genuine issue of material fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The showing of a genuine issue is not satisfied by creating "'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted). Instead, a genuine issue of material fact exists when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party responding to the motion for summary judgment may not rest upon the pleadings, but must identify specific facts that establish a genuine issue. *Id.* The nonmoving party's evidence, however, "is to be believed, and all justifiable inferences are to be drawn in [the nonmoving party's] favor." *Id.* at 255; *see also Hunt v. Cromartie*, 526 U.S. 541, 552 (1999).

The Court's jurisdiction in this case is based on the parties' diversity of citizenship and the amount in controversy of the claims, pursuant to 28 U.S.C. § 1332.[17] "A federal court sitting in diversity ordinarily must follow the choice-of-law rules of the State in which it sits." *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 65 (2013) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313

---

[17] Winn-Dixie is a foreign limited liability company authorized to do and doing business in the State of Louisiana. R. Doc. No. 1, at 1 ¶ 1. MSI is a Mississippi corporation authorized to do and doing business in the State of Louisiana. R. Doc. No. 11, at 1 ¶¶ 1–2. The matter in controversy exceeds $75,000, exclusive of interest and costs, as required by 28 U.S.C. § 1332. R. Doc. No. 1, at 1 ¶ 2.

6

U.S. 487, 496–97 (1941)); *Weber v. PACT XPP Techs., AG*, 811 F.3d 758, 770 (5th Cir. 2016). Under Louisiana law, "contracting parties generally have the freedom to choose which state's law will govern disputes arising out of the contract." *Sampson v. GATX Corp.*, 547 F. App'x 369, 376 (5th Cir. 2013); *see* La. Civ. Code Ann. art. 3540. Where a contract includes a choice-of-law provision, the provision "'is presumed valid until it is proved invalid.'" *IberiaBank v. Broussard*, 907 F.3d 826, 835 (5th Cir. 2018) (quoting *Daniels v. Int'l Paper Co.*, 51,633 (La. App. 2 Cir. 11/3/17), 245 So. 3d 180, 184).

The choice-of-law provision in the Services Agreement states that the agreement "shall be governed and construed in accordance with the laws of the State of Florida."[18] The parties do not dispute that the agreement may be interpreted under Florida law. Moreover, Florida law governing the interpretation of indemnification provisions does not "contravene the public policy" of Louisiana. *See* La. Civ. Code Ann. art. 3540.[19] Therefore, the Court will analyze the issues presented according to Florida law.

Under Florida law, contractual language and indemnification provisions are to be interpreted "according to its plain meaning in line with 'generally accepted rules of construction' to give effect to the intent of the contracting parties." *BVS Acquisition Co., LLC v. Brown*, 649 F. App'x 651, 654 (11th Cir. 2016) (citing *Intervest Constr. of*

---

[18] R. Doc. No. 34-4, at 16 ¶ 14.6.
[19] Article 3540 provides that "issues of conventional obligations are governed by the law expressly chosen or clearly relied upon by the parties, except to the extent that law contravenes the public policy of the state whose law would otherwise be applicable . . . ."

7

*Jax, Inc. v. Gen. Fid. Ins. Co.*, 133 So.3d 494, 497 (Fla. 2014) and *Dade Cty. Sch. Bd. v. Radio Station WQBA*, 731 So.2d 638, 643 (Fla.1999)).

However, indemnity provisions that attempt to indemnify a party against its own conduct are "viewed with disfavor in Florida." *Charles Poe Masonry, Inc. v. Spring Lock Scaffolding Rental Equip. Co.*, 374 So. 2d 487, 489 (Fla. 1979); *Fid. & Guar. Ins. Co. v. Ford Motor Co.*, 707 F. Supp. 2d 1300, 1313 (M.D. Fla. 2010) (citing *Univ. Plaza Shopping Ctr. v. Stewart*, 272 So. 2d 507, 511 (Fla. 1973)). Such clauses will only be enforced if they "express an intent to indemnify against the indemnitee's own wrongful acts in 'clear and unequivocal terms.'" *Acosta v. United Rentals (N. Am.), Inc.*, No. 8:12-CV-01530, 2013 WL 869520, at *4 (M.D. Fla. Mar. 7, 2013) (quoting *Cox Cable Corp. v. Gulf Power Co.*, 591 So.2d 627, 629 (Fla.1992)); *see Charles Poe Masonry*, 374 So. 2d at 489. "General terms" providing for indemnity are insufficient and "do not disclose an intention to indemnify for consequences arising from the wrongful acts of the indemnitee." *Charles Poe Masonry*, 374 So.2d at 489; *see BVS Acquisition Co.*, 649 F. App'x at 655 ("[B]road but general language is insufficient to qualify as an express statement to that effect.").

The requirement of a "clear and unequivocal" statement of intent applies to indemnification clauses that seek to indemnify for sole negligence by the indemnitee as well as clauses that purport to indemnify for joint negligence by the indemnitee and another party. *Cox Cable Corp.* 591 So.2d at 629–30; *Sanislo v. Give Kids the World*, 157 So. 3d 256, 263–64 (Fla. 2015).

When indemnification depends on the underlying claim, any declaration by the court as to a party's duty to indemnify is premature unless there has been a resolution of the claim on the merits. *Evanston Ins. Co. v. Europa Bldg. Assocs., Inc.*, No. 18-CV-80174, 2019 WL 656216, at *3 (S.D. Fla. Jan. 15, 2019). "The only exception to this general principle is if the court can determine that the allegations in the complaint could under no circumstances lead to a result which would trigger the duty to indemnify." *Northland Cas. Co. v. HBE Corp.*, 160 F. Supp. 2d 1348, 1360 (M.D. Fla. 2001) (citations omitted); s*ee Welch v. Complete Care Corp.*, 818 So. 2d 645, 651 (Fla. Dist. Ct. App. 2002).

### III.

At this point in the litigation, no resolution has been reached with respect to the merits of Keller's complaint against Winn-Dixie. Specifically, no determination has been made regarding an allocation of fault among Keller, Winn-Dixie, and MSI. Consequently, this Court cannot conclude, at this time, that Keller's allegations would not, under any circumstances, trigger MSI's duty to indemnify pursuant to the Services Agreement.[20]

---

[20] Based on the provisions of the Services Agreement, MSI would be required to indemnify Winn-Dixie if there is a finding that Keller's injuries arose from "any act, action or omission" of MSI or its employees, and that Winn-Dixie was not, in any way, at fault with respect to her injuries. *See* R. Doc. No. 34-4, at 11–12. As discussed herein, the indemnification provision is unenforceable for claims arising from Winn-Dixie's sole or joint negligence.

Pursuant to discussions at the September 10, 2019 in-chambers conference, the parties have agreed that, should the case proceed to trial and conclude in a finding by the jury that Keller's injuries were not caused by Winn-Dixie's sole or joint

9

With respect to whether MSI has a duty to indemnify Winn-Dixie from Winn-Dixie's sole or joint negligence, the Court finds that the language of Section 9.2(1) fails to meet the "clear and unequivocal" standard established under Florida law. Section 9.2(1) of the Services Agreement provides for Winn-Dixie's indemnification by MSI from losses incurred by or claims made against Winn-Dixie "as a result of [MSI]'s performance under this Agreement," or liability or causes of action that "arise out of or relate to . . . any claim of personal injury . . . arising from any act, action or omission of [MSI], its agents, employees or any subcontractors . . . "[21] However, the Services Agreement does not clearly and unequivocally provide for indemnification by MSI for liability occasioned by Winn-Dixie's own wrongful conduct or joint negligence; Section 9.2(1) only specifies an exception from indemnification for claims that arise "due to the gross negligence or willful misconduct of [Winn-Dixie]."[22]

Winn-Dixie argues that Section 9.2(1), read as a whole, expresses the requisite intent to "indemnify all fault except gross negligence or willful misconduct," which would, allegedly, include ordinary negligence.[23] However, as the Florida Supreme Court has repeatedly emphasized, indemnification clauses that purport to protect an indemnitee from liability caused by the indemnitee's own or joint negligence must

---

negligence, the parties will resolve the issue of payment for attorneys' fees and costs post-trial and without a jury.
[21] R. Doc. No. 34-4, at 11–12.
[22] *Id.* at 11. Neither Keller, Winn-Dixie, nor MSI has alleged that Keller's injuries were caused by "gross negligence or willful misconduct" by Winn-Dixie. Rather, Keller's complaint claims that Winn-Dixie "failed to exercise reasonable care to keep its aisle in a reasonably safe condition." R. Doc. No. 1, at 2 ¶ 2.
[23] R. Doc. No. 34-1, at 7.

10

contain a specific provision to that effect. *See Sanislo*, 374 So.2d at 489; *Charles Poe Masonry*, 374 So.2d at 489. Although the exclusion from indemnification for "gross negligence or willful misconduct" by Winn-Dixie may arguably be interpreted to imply indemnification for ordinary negligence, this type of inference by omission falls short of the "clear and unequivocal" standard set forth under Florida law. Moreover, the provision does not specifically address indemnification of claims relating to joint negligence by Winn-Dixie and another party. *See Acosta*, 2013 WL 869520, at *5 (holding that the indemnification provision did not "validly require" indemnification for joint negligence because it "d[id] not speak to joint negligence" between the parties).

In the alternative, Winn-Dixie argues that under Section 9.2(3), Winn-Dixie is indemnified from claims arising from injuries sustained by MSI employees in the course and scope of their employment.[24] According to Winn-Dixie, Section 9.2(3) expresses the intent to "shift financial responsibility for payment" of such claims from Winn-Dixie to MSI.[25] Winn-Dixie contends that this provision, when read in conjunction with Section 9.2(1), "evidences Winn-Dixie and MSI's understanding" that Winn-Dixie would not be financially responsible for claims such as those alleged by Keller, absent evidence of Winn-Dixie's gross negligence or willful misconduct.[26] However, an indemnification clause that requires reference to other contractual provisions to determine the parties' intent does not satisfy the "clear and

---

[24] *See* R. Doc. No. 34-1, at 8.
[25] *Id*.
[26] *Id*. at 8–9.

11

unequivocal" requirement for indemnification from an indemnitee's own or joint conduct. *See H & H Painting & Waterproofing Co. v. Mech. Masters, Inc.*, 923 So. 2d 1227, 1229 (Fla. Dist. Ct. App. 2006). Furthermore, Section 9.2(3) is notably silent on its applicable scope with respect to the cause of an MSI employee's claims—specifically, accidents caused by Winn-Dixie's negligence or by joint negligence by Winn-Dixie and another party. This type of broad indemnification is unenforceable for injuries resulting from Winn-Dixie's own wrongful conduct. *See On Target, Inc. v. Allstate Floridian Ins. Co.*, 23 So. 3d 180, 185 (Fla. Dist. Ct. App. 2009) (distinguishing valid indemnification clause from "the extremely broad indemnification against loss of property or life regardless of cause" clauses held to be invalid in prior cases) (citing *University Plaza*, 272 So.2d at 511 and *Charles Poe Masonry*, 374 So.2d at 489).

Because no determination has yet been made with respect to the liability of Keller, Winn-Dixie, or MSI for Keller's injuries, summary judgment as to indemnification is premature at this stage. Although Sections 9.2(1) and 9.2(3) of the Services Agreement do not clearly and unequivocally indemnify Winn-Dixie against its own or joint negligence, MSI's duty to indemnify may still be triggered.

**IV.**

Accordingly,

**IT IS ORDERED** that MSI's motion for summary judgment is **DENIED**.

**IT IS FURTHER ORDERED** that Winn-Dixie's motion for partial summary judgment is **DENIED**.

New Orleans, Louisiana, September 10, 2019.

                                               **LANCE M. AFRICK**
                                       **UNITED STATES DISTRICT JUDGE**